85 P.3d 653

Terry HENRICKSON and Kathy Henrickson, husband and wife; Dennis Simpson and Becky Simpson, husband and wife; J.D. Simpson and Mary Simpson, husband and wife, Plaintiffs–Respondents,

v.

NAMPA HIGHWAY DISTRICT, Defendant–Appellant.

No. 29134.

Supreme Court of Idaho,
Boise, January 2004 Term.

Feb. 6, 2004.

Gigray, Miller & Downen, Caldwell, for appellant. Wm. F. Gigray, Jr., argued.

Kenneth F. White, Nampa, for respondent. Kenneth F. White argued.

EISMANN, Justice.

This is an appeal from the judgment of the district court enjoining the highway district from relocating a public road onto property owned by the respondents. The district court found that the surveys upon which the highway district relied were not accurate. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

In 1906 the Canyon County Commissioners granted the respondent Nampa Highway District (Highway District) a right-of-way for what is now named Robinson Road. That right-of-way included twenty-five feet on either side of the common section line between Sections 5 and 6, Township North, Range 1 West of the Boise Meridian. In 1999 the Highway District sought to straighten, widen and repave the road, and it hired a surveyor to locate the boundaries of its easement. That survey placed the easement upon properties currently being used by the respondents Terry and Kathy Henrickson, Dennis and Becky Simpson, and J.D. and Mary Simpson (Plaintiffs). On December 10, 1999, the Plaintiffs filed this action seeking to enjoin the Highway District from widening the road onto what they contended were portions of their properties that were not subject to the Highway District's easement.

This case was tried to the district court on June 7 and 8, 2001, with both parties offering testimony from surveying experts. The primary issue was the validity of surveying work done by Melvin Davenport that was begun in 1956 and completed in 1965, and particularly whether or not he had properly located the common quarter corner between Sections 5 and 6 and whether the brass cap he placed to mark that common quarter corner had been subsequently moved. The district court found credible the testimony of Plaintiffs' expert Steve Wellington that the quarter corner was a lost corner and that Mr. Davenport had not properly established it. The district court entered an order enjoining the Highway District from completing the proposed project and ordering the parties to agree upon a surveyor or surveyors to re-establish the common quarter corner of Sections 5 and 6, with the costs of such work to be shared equally. The Highway District filed a motion asking the district court to make additional and amended findings of fact and conclusions of law, which was denied. The Highway District then appealed.

## II. ANALYSIS

■■■ The Highway District argues that the district court erred in finding that the common quarter corner between Sections 5 and 6 was a lost corner rather than either an existent corner or an obliterated corner. The credibility and weight to be given evidence is in the province of the trier of fact, and the findings of fact by the trial judge will not be set aside unless clearly erroneous. *Pointner v. Johnson*, 107 Idaho 1014, 695 P.2d 399 (1985).

Surveys must be conducted in accordance with the *United States Manual of Surveying Instructions for the Survey of the Public Lands of the United States (Manual of Surveying Instructions)*.[1] It defines an existent corner as "one whose position can be identified by verifying the evidence of the monu-

ment or its accessories, by reference to the description in the field notes, or located by an acceptable supplemental survey record, some physical evidence, or testimony." *Pointner v. Johnson*, 107 Idaho 1014, 1018, 695 P.2d 399, 403 (1985) (quoting from *Manual of Surveying Instructions* 130 (1973)). When the government survey was originally done in 1870, the surveyors used wooden posts to mark the corners. Later surveyors replaced those posts with more durable markers, such as stones, but not at all locations. The wooden posts did not last very long, and the stones were often moved when the area was settled. There was no evidence presented that the original monument placed to mark the common quarter corner between Sections 5 and 6 still exists. Likewise, no evidence was offered regarding physical evidence showing the location of that monument, and, obviously, there was no testimony from anyone who had personal knowledge as to the location of the original monuments. There was expert testimony that this quarter corner was not an existent corner, and the district court's finding in that regard is not clearly erroneous.

The *Manual of Surveying Instructions* defines an obliterated corner as " 'one at whose point there are no remaining traces of the monument or its accessories, but whose location has been perpetuated,' or may be recovered by acts and testimony of interested landowners, competent surveyors, witnesses, or by some acceptable record evidence." *Id.* In 1956 Mr. Davenport placed a brass cap that was supposed to recreate the location of the original monument. The primary issue at trial was whether that brass cap did so. The trial court found that it did not. It summarized its findings as follows:

> The Plaintiffs have established that the corner is lost by producing enough evidence to place considerable doubt on whether the monument accurately represents the common quarter corner, by pro-

---

1. Idaho Code § 31–2709 provides:

   No surveys or resurveys hereafter made shall be considered legal evidence in any court within the state, except such surveys as are made in accordance with the United States manual of surveying instructions, the circular on restora-

tion of lost or obliterated corners and subdivisions of sections, issued by the general land office, or by the authority of the United States, the state of Idaho, or by mutual consent of the parties.

viding evidence, including: (1) the Plaintiff's showing that the corner monuments are not consistent with the original Government Land Office surveys; (2) Davenport's original field notes indicating that the quarter corner was lost, and that he attempted to restore the corner, but then did not follow restoration requirements reestablishing it; (3) the inconsistency in Davenport's field notes, subsequent 1976 survey, and CP & F filing which purports to identify the correct location of the quarter corner in question; (4) Davenport's Corner Perpetuation and Filings (CP & F's) that were not filed until several years after the work was started to have been completed, in violation of Idaho Statute; (5) Dan McCurley's testimony that Davenport's brass marker had formerly been located in the direct center of Robinson Road; (6) the uncertainties of the area recognized by several surveyors; (7) the dual re-bars purporting to monument the common corner between Sections 5, 6, 31 and 32; and (8) the lack of a stone monument near the Davenport brass monument, where the railroad surveys and Davenport's original notes mentioned a located stone.

The district court's findings were based primarily upon the testimony of Steve Wellington, one of the Plaintiffs' expert witnesses.

Mr. Wellington testified that Mr. Davenport's field notes indicate that in 1956 he considered this quarter corner as a lost corner and then attempted to establish it, but in doing so he did not follow the procedures required by the *Manual of Surveying Instructions*. Mr. Davenport filed a CP & F in 1974 with respect to this quarter corner in which he acknowledged the brass cap monument he had placed there in 1956. In a 1976 survey he performed, however, Mr. Davenport showed that the quarter corner was marked with 5/8 rebar. Even though Idaho Code § 55–1604 required that a CP & F be filed within ninety days after the survey was completed, Mr. Davenport filed his CP & F's that were relevant to this case many years after the surveys. Dan McCurley testified that the brass cap monument had at one time been in the exact center of Robinson Road, but during a repaving it was removed.

There are two pins marking the corner common to Sections 5, 6, 31, and 32, and different surveyors have used each of them in different surveys, creating inconsistencies. The record did not show which of those two pins Mr. Davenport used in his surveys. A survey done in 1916 by the Oregon Short Line Railroad noted a stone at the quarter corner. In a CP & F filed by Mr. Davenport in December 1974 based upon work he had performed in 1965, he did not mention a stone. In a CP & F filed by Mr. Davenport in 1981 based upon work he performed in 1970, he acknowledged a stone. Mr. Wellington testified that when replacing a stone monument with a more durable monument, it was common practice to bury the stone upside down next to the new monument as proof of what was done. The existing brass cap monument did not have any stone buried near it.

Based upon the evidence, the district court found that the brass cap monument installed by Mr. Davenport in 1956 was not consistent with the original Government Land Office survey. That finding is not clearly erroneous.

The *Manual of Surveying Instructions* defines a lost corner as "one whose position cannot be determined, either from original or reliable marks, or reliable external evidence." *Pointner v. Johnson*, 107 Idaho 1014, 1018, 695 P.2d 399, 403 (1985) (quoting from *Manual of Surveying Instructions* 138 (1973)). If a corner is neither an existent corner nor an obliterated corner, then it is a lost corner. Based upon the evidence presented, the district court's finding that the quarter corner between Sections 5 and 6 was a lost corner is not clearly erroneous.

### III. CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal to the respondents.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL and BURDICK concur.